IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| GARY DEAN STRONER, #01777671, | § | |
| Petitioner, | § | |
| | § | |
| v. | § | CIVIL CASE NO. 3:16-CV-2772-B-BK |
| | § | |
| LORIE DAVIS, Director, | § | |
| Texas Department of Criminal Justice, | § | |
| Correctional Institutions Div., | § | |
| Respondent. | § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to 28 U.S.C. § 636(b) and *Special Order 3*, the petition for writ of habeas corpus under 28 U.S.C. § 2254 was referred to the United States magistrate judge. Upon review of the relevant pleadings and applicable law, the petition should be **DENIED**.[1]

**I. BACKGROUND**

In 2012, a jury convicted Petitioner of aggravated kidnapping and sentenced him to 35 years' imprisonment. *State v. Stroner*, No. F11-33918-R (265th Jud. Dist. Court, Dallas Cty., Tex., Mar. 23, 2012), *aff'd*, No. 05-12-00577-CR, 2014 WL 31218 (Tex. App.–Dallas, Jan. 3, 2014, pet. ref'd). The Texas Court of Criminal Appeals (TCCA) subsequently denied state habeas relief. *Ex parte Stroner*, No. WR-84,013-01 (Tex. Crim. App. June 29, 2016) (denying relief without written order on findings of trial court without a hearing); Doc. 19-12.

---

[1] In his reply, Plaintiff states that he did not consent to proceed before a magistrate judge. Doc. 30 at 1. Petitioner's consent is not required for the district judge's referral of the case to the magistrate judge for pretrial management, including making a recommendation as to the disposition of the case, as here. *See* 28 U.S.C. § 636(b)(1).

On September 29, 2016, this case was initiated by the filing of Petitioner's *pro se* habeas petition, in which he alleges ineffective assistance of counsel at trial, prosecutorial misconduct, and trial errors. Doc. 3 at 6-17. Respondent argues the claims lack merit. Doc. 26. Petitioner has filed a reply. Doc. 30.

## II. ANALYSIS

Petitioner is not entitled to habeas corpus relief unless the state court's adjudication on the merits:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Petitioner bears the burden of establishing that he is entitled to relief. *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002). However, that burden is "difficult to meet," *Harrington v. Richter*, 562 U.S. 86, 102, 105 (2011), because the decision of the state court is reviewed under a "highly deferential" standard and afforded the "benefit of the doubt." *Woodford*, 537 U.S. at 24 (citation and internal quotation marks omitted). Section 2254(d) "was meant to stop just short of imposing a complete bar to federal court relitigation of claims already rejected in state court proceedings, allowing for federal habeas relief only where there have been 'extreme malfunctions in the state criminal justice systems.'" *Wilson v. Cain*, 641 F.3d 96, 100 (5th Cir. 2011) (*quoting Richter*, 562 U.S. at 102)). Consequently, as long as "'fairminded jurists could disagree' on the correctness of the state court's decision," federal habeas relief should not be granted. *Richter*, 562 U.S. at 102 (*quoting Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

Explained differently, "even if the federal court disagrees with the state court ruling, the federal court should not grant habeas relief unless the state court ruling was objectively unreasonable." *Wilson*, 641 F.3d at 100; *Richter*, 562 U.S. at 101 ("an *unreasonable* application of federal law is different from an *incorrect* application of federal law.") (quotations and quoted case omitted; emphasis in original). The deferential standard of review applies even when the state court has summarily denied the claims without written order, as in this case. *See Richter*, 562 U.S. at 100 ("§2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'").

Petitioner requests *de novo* review of the grounds raised that were not expressly addressed in the state court's findings (fair-cross-section claim in ground 1 and grounds 4, 5, and 6).[2] Doc. 3 at 9, 12, 14-15. However, he fails to rebut the *Richter* presumption that "'[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary.'" *Johnson v. Williams*, 568 U.S. 289, 298 (2013) (quoting *Richter*, 562 U.S. at 784-85) (clarifying that the *Richter* presumption applies even when a state habeas decision writes on certain issues but is silent on other raised issues); *see also Hoffman v. Cain*, 752 F.3d 430, 439 (5th Cir. 2014). Thus, Petitioner's claims are subject to deferential review under section 2254(d)(1).

---

[2] The state trial court issued findings and conclusions of law addressing only the ineffective assistance of counsel claims, which the TCCA had remanded for an evidentiary investigation. Doc. 20-5 at 3-4. The TCCA subsequently denied the habeas application without written order on the findings of the trial court without a hearing. Doc. 19-12. "Under Texas law a denial of relief by the Court of Criminal Appeals serves as a denial of relief on the merits of the claim." *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000) (citing *Ex parte Torres*, 943 S.W.2d 469 (Tex. Crim. App. 1997)).

### A. Ineffective Assistance of Counsel

In his first three grounds, Petitioner claims ineffective assistance of counsel at trial. Such claims are reviewed under a "doubly deferential" standard, taking "a 'highly deferential' look at counsel's performance," under *Strickland v. Washington*, 466 U.S. 668, 689 (1984), "through the 'deferential lens of § 2254(d).'" *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011) (quoted cases omitted). In light of the deference accorded by section 2254(d)(1), "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable." *Richter*, 562 U.S. 86, 101.

To establish ineffective assistance of counsel at trial, a petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. 668, 687. The Court need not address both components if the petitioner makes an insufficient showing on one. *Id.* at 697. To establish deficient performance, a petitioner must show that his attorney's actions "fell below an objective standard of reasonableness." *Id.* at 689. In evaluating an attorney's performance, there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," or that under the circumstances the challenged action might be considered sound trial strategy. *Id.* at 689. Under *Strickland*'s prejudice prong, a petitioner must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

### 1. Failure to Object to Juror Bias – Claim 1

Petitioner complains of three instances of ineffective assistance of counsel during jury selection, however, he fails to show the state court's application of *Strickland* as to those claims was objectively unreasonable.

### (a) Prospective Juror Ms. Campbell

Petitioner asserts that during voir dire, a prospective juror "made a statement that appears she could not be fair" because it "exhibited a bias against the Petitioner's right to the presumption of innocence." Doc. 3 at 8. Petitioner argues that counsel did not investigate the matter and that ultimately two panelists by the name of Campbell were selected as jurors. *Id.* His claim is premised on the following exchange:

> MR. ROSEMERGY [defense counsel]: I'll give you the same question. Judge says right now you're the jury, you haven't heard any testimony. What's your verdict?
>
> PROSPECTIVE JUROR CAMPBELL: And it's aggravated assault plain?
>
> MR. ROSEMERGY: It's aggravated kidnapping, but that's not the question.
>
> PROSPECTIVE JUROR CAMPBELL: But you added the sexual stuff. He did.
>
> MR. ROSEMERGY: I didn't add any sexual stuff.
>
> PROSPECTIVE JUROR CAMPBELL: He did. My deal is, it's sexual, yeah, I'm not -- not guilty.
>
> MR. ROSEMERGY: Well no –
>
> PROSPECTIVE JUROR REGAN: Ask me, ask me.
>
> PROSPECTIVE JUROR CAMPBELL: I have not had a ticket yet.
>
> THE COURT: I bet you talk yourself out of some though.
>
> PROSPECTIVE JUROR CAMPBELL: I have, I have. I'm a nurse, I've done that, yes.

>MR. ROSEMERGY: All right, let me ask you this. You know what he's charged with, but the Judge says you haven't heard any evidence and I need a verdict from you right now. What would it be?
>
>PROSPECTIVE JUROR CAMPBELL: I don't know. I mean, I have a problem. Because he's up there putting up all this aggravated assault, sexual assault.
>
>MR. ROSEMERGY: That's not evidence in the case.
>
>PROSPECTIVE JUROR CAMPBELL: And I'm going –
>
>MR. ROSEMERGY: That's not evidence in the case. You heard him also say all the evidence comes from up here, right?
>
>PROSPECTIVE JUROR CAMPBELL: That's true.
>
>MR. ROSEMERGY: So you haven't heard any evidence. Presumption of innocence. What's your verdict?
>
>PROSPECTIVE JUROR CAMPBELL: Not guilty, but.
>
>MR. ROSEMERGY: Okay. You're getting it. You got it.

Doc. 18-5 at 106-107 (Reporter Record (RR) Vol. 2).

The state habeas court rejected this claim based on trial counsel's affidavit regarding the three prospective jurors named Campbell, holding:

>The Court finds that Paul Rosemergy is a trustworthy individual.
>
>Rosemergy presented relevant issues to the jury panel during voir dire.
>
>Rosemergy and the prosecutor submitted 22 panelists for cause and two panelists were excused by agreement.
>
>Rosemergy did not submit panelists # 7, # 20 and # 54 because they could presume Applicant was not guilty. Had they not done so, he would have submitted them for cause.

Doc. 20-5 at 16-17.

Applying the appropriate deference to the state court's decision, and having independently reviewed Petitioner's claim and the state court record, the Court concludes that the state court's application of *Strickland* was reasonable. Contrary to his assertion, Prospective Juror Campbell appropriately demonstrated that she would presume a hypothetical defendant not guilty until proven so. On the other hand, Petitioner offers only conclusory allegations that fail to demonstrate that defense counsel's performance in failing to investigate and/or object fell below an objective level of reasonableness. See *Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983) ("Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his pro se petition . . . to be of probative evidentiary value."). Moreover, "failure to make a frivolous objection does not cause counsel's performance to fall below an objective level of reasonableness," *see Green v. Johnson*, 160 F.3d 1029, 1037 (5th Cir. 1998), and Petitioner has posited no non-frivolous basis for objection.

### (b) Prospective Juror Number 7

Likewise, Petitioner fails to present a non-frivolous basis to object to venire panelist 7, Marsha Campbell, who after she was selected as a juror, told Ms. Mitchell, the lead prosecutor, "I know you from somewhere." Doc. 3 at 8. As is relevant to Petitioner's claim, the following exchange occurred at the close of voir dire, after the jury had been impaneled and excused for the day:

THE COURT: Anything else we need to put on the record?

[DEFENSE]: Nothing from the defense, Your Honor.

THE COURT: Anything from the State?

MS. MITCHELL: Nothing from the State, Your Honor. Well actually, juror No. 7, who's the first woman picked, Marsha Campbell, she just looked at me and said, "I

>know you from somewhere." I don't think I know her from anywhere but I wanted to make y'all aware of it.
>THE COURT: Okay. All right. She didn't say it when I asked.
>
>MS. MITCHELL: I don't know.
>
>THE COURT: Okay. Probably just from this trial. See you in the morning.

Doc. 18-5 at 136-137.

Petitioner has wholly failed to demonstrate any bias on the part of Juror 7; and Juror 7's mere statement that she knew the prosecutor "from somewhere" does not establish such. Juror 7's offhand remark plainly does not constitute one of the "extreme situations" where bias can be presumed. *See Solis v. Cockrell*, 342 F.3d 392, 395 (5th Cir. 2003) (presuming bias only where the juror is an employee of the prosecuting agency, a close relative of participants in the trial or the criminal transaction, or a witness or somehow involved in the criminal transaction.). Thus, Petitioner has failed to show that counsel's performance was constitutionally deficient in this regard. *See Ross*, 694 F.2d at 1011. Furthermore, Petitioner's reliance on *Ex parte Welborn*, 785 S.W.2d 391 (Tex. Crim. App. 1990), is misplaced. That holding lends no support here because it addressed counsel's failure to investigate a juror's misconduct, and not the mere possibility of bias. Doc. 12 at 12-13.

### (c) Fair-Cross-Section and All-Female Jury

While Petitioner argues that trial counsel was ineffective for failing to object that the jury did not represent a fair-cross-section of the population, such an objection based only on the gender of the jurors would have been futile. *See Halley v. Thaler,* 448 Fed. App'x 518, 524 (5th Cir. 2011) ("the failure to 'raise meritless objections is not ineffective lawyering'"). Petitioner claims the "panel of 65 was 71% female and 29% male, and 25% of the males were in the strike

range," and "none of the male jurors were able to sit as juror." Doc. 12 at 14. However, even if true that males were underrepresented, Petitioner does not claim, much less establish, that the underrepresentation was the result of a systematic exclusion. *See Duren v. Missouri,* 439 U.S. 357, 364 (1979) (to establish a prima facie violation, the defendant must demonstrate "(1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.").³

Petitioner complains about the makeup of venire in his case, Doc. 12 at 14-16, but does not identify any procedure or selection criteria used in Dallas County that operated to systematically exclude males from the venire. Doc. 12 at 14-16. "Disproportionate representation in a single panel does not demonstrate the systematic exclusion of a distinctive groups in violation of the defendant's rights under the Sixth Amendment." *May v. State,* 738 S.W.2d 261, 269 (Tex. Crim. App. 1987); *see also Pondexter v. State*, 942 S.W.2d 577, 581 (Tex. Crim. App. 1996) (rejecting fair-cross-section challenge because defendant did not show that selection process systematically excluded African Americans from jury panels).

Petitioner's contention that counsel was ineffective in failing to object to the all-woman jury when given the opportunity fares no better. Doc. 12 at 14-16; Doc. 18-5 at 131. As the Supreme Court concluded in *Taylor v. Louisiana*, 419 U.S. 522, 538 (1975), defendants "are not entitled to a jury of any particular composition." Neither are they "entitled to a jury, jury wheel,

---

³ "The Sixth Amendment secures to criminal defendants the right to be tried by an impartial jury drawn from sources reflecting a fair cross section of the community." *Berghuis v. Smith,* 559 U.S. 314, 319 (2010).

pool of names, panel, or venire of any particular composition, and there is no requirement that those bodies 'mirror the community and reflect the various distinctive groups in the population.'" *Hearn v. Cockrell*, 73 Fed. App'x 79, 2003 WL 21756441, at *1, *6 (5th Cir. Jun. 23, 2003) (quoting *Taylor*, 419 U.S. at 538).

On this record, Petitioner cannot overcome the strong presumption that he received effective assistance of counsel during jury selection.  Thus, the state court's denial of relief on this ground was not an unreasonable application of federal law, and his first claim fails.

### 2.  Failure to Adequately Investigate and Call Witnesses – Claim 2

Next, Petitioner asserts that defense counsel rendered ineffective assistance in failing "to seek out and present two crucial witnesses—a doctor and Robert Bellamy—"to support his defensive theory, and rebut the State's entire case-in chief." Doc. 12 at 16.  He claims that a doctor's expert testimony could "have proved—through physical evidence—that Karen [the complainant] was lying to the jury" when she testified that her face and arms were badly bruised after Petitioner grabbed her arms and punched and slapped her face. Doc. 12 at 18.  Petitioner avers that expert testimony "on how someone bruises would have properly impeached Karen's testimony at trial." *Id.*  Regarding Bellamy, the complainant's ex-husband, Petitioner asserts that he "would have testified that Karen did acts of violence" against him, and, thus, could have rebutted Karen's testimony "that the scissor incident was a harmless accident." Doc. 12 at 20.

Relying on trial counsel's affidavit, the state habeas court rejected Petitioner's assertions:

> Rosemergy explains that the indictment alleged, in relevant part, ". . . and by threatening to use deadly force, and defendant did intentionally and knowingly abduct the complainant with the intent to inflict bodily injury on complainant. . .". As a matter of trial strategy, Rosemergy did not believe evidence of the complainant

Page 10 of 19

> easily bruising (which Applicant asserts should have been presented via expert testimony) would have established a "matter in issue." The indictment did not allege that Applicant caused injury, merely that he threatened injury.
>
> Rosemergy hired Joplin Investigations to assist him in this case. Joplin Investigations interviewed Robert Bellamy, the complainant's ex-husband. Applicant told trial counsel and Joplin Investigations that the complainant had been violent toward him and Bellamy and that Bellamy had witnessed acts of violence against Applicant. The investigation revealed that Bellamy had not witnessed the complainant assault Applicant. Further, the investigation revealed that there were no police reports of incidents where Bellamy was falsely accused of violence against the complainant.

Doc. 20-5 at 17.

To show that counsel rendered ineffective assistance by neglecting to secure and call a lay or expert witness, the petitioner must "name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense." *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009) ("complaints of uncalled witnesses are not favored in federal habeas corpus review because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have stated are largely speculative."). The "requirements of affirmatively showing availability and willingness to testify "[are] not a matter of formalism," but they are "part of the burden of proving that trial counsel could have found and presented a favorable expert." *Hooks v. Thaler*, 394 Fed. App'x 79, 82-83 (5th Cir. 2010).

Petitioner does not identify any medical expert who should or could have testified, does not allege with specificity the substance of the proposed expert's testimony, and fails to explain how the testimony of an expert would have been favorable to his defense. *See, e.g., Evans v. Cockrell,* 285 F.3d 370, 377-78 (5th Cir. 2002) (denying uncalled expert witness claim where

Page 11 of 19

petitioner failed to present evidence of what scientific expert would have stated if called). "Given this complete lack of necessary evidence, [Petitioner] cannot establish prejudice under *Strickland*." *Hooks*, 394 Fed. App'x at 83.

Moreover, he has not demonstrated "a reasonable probability that, but for counsel's failure to request an expert, the jury would have had a reasonable doubt concerning his guilt." *Earhart v. Johnson*, 132 F.3d 1062, 1068 (5th Cir.1998); *see also Day*, 566 F.3d at 539. Indeed, Petitioner does not provide any evidence—aside from his belief that the complainant bruised easily as a result of her medications and disability—to establish that he was not guilty of aggravated kidnapping. Doc. 12 at 17-18. While Petitioner focuses his arguments on counsel's failure to impeach the complainant's testimony about her bruises, Doc. 12 at 18, such testimony was not necessary to establish his guilt. As the state court indicated, the indictment charged Petitioner only with threatening injury, not actually causing injury. Doc. 20-5 at 17; Doc. 20-6 at 217.

Likewise, Petitioner fails to proffer any evidence that Bellamy was available and willing to testify, and that his testimony would have been favorable to Petitioner's defense. *See Evans*, 285 F.3d at 377. As such, he again fails to meet the *Strickland* prejudice prong. Finally, any testimony by Bellamy about prior acts of violence committed by the complainant would have been duplicative of complainant's own testimony about her history of "rages" and prior assaults on Bellamy and Petitioner as noted by the state appellate court. *Stroner*, 2014 WL 31218, at *2. Thus, even if Bellamy had testified as Petitioner suggests, there would not be a reasonable probability that he would have changed the jury's conclusion that Petitioner was guilty of aggravated kidnapping. *Day*, 566 F.3d at 539.

Because Petitioner has not demonstrated that the state court decision rejecting his ineffective-assistance-of-counsel claim was contrary to or an unreasonable application of clearly established federal law, his second claim fails.

### 3. Failure to Preserve Error at Punishment – Claim 3

Petitioner also claims counsel was ineffective in failing to lodge a "second objection (or running objection) to the state's rephased [sic] question that supported the State's theory that Petitioner was manipulating everyone." Doc. 12 at 22. He argues that "[h]ad counsel properly objected, as he implied, the Fifth District Court of Appeals would have ruled on the complained error." *Id.* The state habeas court rejected this claim:

> Rosemergy objected to the admission of the phone recordings of conversations between Applicant and his fiancée, Sherry Franks. A hearing was conducted by the Court, who ruled the majority of the conversations were admissible. Trial counsel renewed his objection when the evidence was offered before the jury. With regard to the question by the prosecutor regarding Applicant manipulating the system, counsel's objection was sustained and the prosecutor rephrased the question. Applicant fails to state what objection counsel should have raised to the rephrased question and that it would have been sustained.

Doc. 20-5 at 18.

Petitioner has not demonstrated that the state court's application of *Strickland* was contrary to or an unreasonable application of clearly established federal law. As in the state court, Petitioner neither identified the objection that counsel should have raised, nor shown that it would have been sustained. Doc. 12 at 22. As such, Petitioner's allegations are again conclusory and, thus, insufficient to show that defense counsel's performance fell below an objective level of reasonableness. *See Ross*, 694 F.2d at 1011. Accordingly, his third claim has no merit.

### B. Presence of Uniformed Officers While Petitioner Testified – Claim 4

Next, Petitioner claims the trial court erred by ordering four officers to surround him as he testified during the guilt innocence phase of the trial, in violation of his rights to the presumption of innocence, due process, and a fair trial. Doc. 12 at 23. He contends the officers' presence gave the jurors the impression that he was guilty and violent. Doc. 12 at 26.

Defense counsel also claimed the number of officers gave "the appearance of guilt" and requested the presence of only one officer. Doc. 18-7 at 6 (RR 4). Although the trial court overruled the objection citing "a security issue," it moved one of the officers to the other side of the courtroom, and noted that there were three uniformed officers in the courtroom and one non-uniformed officer who was in charge of the jury. Doc. 18-7 at 6-7. The court explained that it had requested the extra security when counsel asked that Petitioner be permitted to testify without shackles. Doc. 18-7 at 7.

Petitioner has not met his burden of showing that the state habeas court's implicit denial of this claim was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court. The presence of uniformed police officers in a courtroom during trial is not an inherently prejudicial practice. *Holbrook v. Flynn*, 475 U.S. 560, 568-69 (1986). In *Holbrook*, the Court upheld the district court's use of four uniformed and armed state troopers and other officers seated in the first row of the spectator section behind the defendant throughout a trial as not inherently prejudicial, because the officers were "unlikely to have been taken as a sign of anything other than a normal official concern for the safety and order of the proceedings." *Id.* at 571; *see also United States v. Nicholson,* 846 F.2d 277, 279 (5th

Cir. 1988) (holding that presence of three plainclothes deputies, including one who sat next to defendant, was warranted and not unduly prejudicial to the accused).

Here, Petitioner does not provide any evidence—aside from his personal belief that the jury presumed him guilty and violent and that the "entire situation … scared the … jury"—to demonstrate that the officers' presence during his testimony was so inherently prejudicial that he was denied his constitutional right to a fair trial. Doc. 12 at 26. Again, conclusory and unsupported assertions fail to present a cognizable basis for relief. *Ross*, 694 F.2d at 1011. That notwithstanding, the presence of three uniformed officers during Petitioner's testimony was not inherently prejudicial as the jurors were unlikely to assume anything other than that the officers' presence was reflective of the normal official concern for the safety and order of the proceedings. *See Holbrook*, 475 U.S. at 571-72; *United States v. Figueroa*, 690 Fed. App'x 162, 163 (5th Cir. 2017) (per curiam). In sum, Petitioner has failed to show any actual prejudice resulting from the uniformed officers' presence. *Holbrook*, 475 U.S. at 575. Accordingly, relief on this ground should be denied.

### C. Recusal of Prosecutor – Claim 5

Next, Petitioner asserts that the trial court erred in failing to "recuse" the Assistant District Attorney, Stephanie Mitchell, from prosecuting his case. Doc. 3 at 14-15; Doc. 12, at 23-30. He claims that Ms. Mitchell was biased because, *inter alia*, she lost at his first kidnapping trial, failed to give timely notice of extraneous offenses, and "lied to the jury that Petitioner actually sexually assaulted her and another woman" during the state's closing

argument in the punishment phase of the trial.[4]  Doc. 12 at 28-29.  Because Petitioner's assertions are again unsupported and conclusory, they fail to present a cognizable basis for relief.  *See Ross*, 694 F.2d at 1011.  Nevertheless, as Respondent correctly notes, Doc. 26 at 30-31, the trial court lacked the authority to require the recusal of the prosecutor under Texas law.  *Johnson v. State*, 169 S.W.3d 223, 229 (Tex. Crim. App. 2005) (citing *State ex rel. Eidson v. Edwards*, 793 S.W.2d 1, 6 (Tex. Crim. App. 1990));.  Moreover, violations of state law or procedure alone do not provide grounds for federal habeas relief.  *See Manning v. Blackburn*, 786 F.2d 710, 711 (5th Cir. 1986).  Federal habeas relief is available only for the vindication of rights existing under federal law.  *Id.*  Accordingly, the state court's implied denial of this claim was neither contrary to, nor involved an unreasonable application, of clearly established federal law.  The fifth claim, therefore, fails.

### D.  Prosecutorial Misconduct – Claim 6

Petitioner has not established that the prosecutor's closing statements were improper or amounted to prosecutorial misconduct.  "Prosecutorial misconduct is not a ground for [habeas] relief unless it casts serious doubt upon the correctness of the jury's verdict."  *See Styron v. Johnson*, 262 F.3d 438, 449 (5th Cir. 2001).  For alleged misconduct based on the prosecutor's argument to the jury, a petitioner is entitled to relief only where "the prosecutor's comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"  *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S.

---

[4] Before the punishment phase of the trial began, defense counsel sought to recuse Ms. Mitchell.  The arguments were presented in the judge's office and not transcribed.  The judge then summarily denied the request to recuse on the record.  Doc. 18-7 at 6.

637, 643 (1974)). "Only where improper prosecutorial comments substantially affect the defendant's right to a fair trial do they require reversal." *Styron*, 262 F.3d at 449.

Petitioner asserts the prosecutor's closing argument during the punishment phase was "manifestly improper" because the following statements to the jury were "incurable and inflammatory." Doc. 12 at 31-32.

> You heard from the testimony about two women he sexually assaulted already and he's sitting here on these jail calls making light of them, making fun of sexually assaulting me. That's who Garry Stroner is.

Doc. 18-8 at 41 (RR 5); Doc. 19-3 at 14 (RR 6 Part 10, State Ex. 70) (tr. second jail call).

> Now look at this tattoo here. He's not affiliated with the KKK? He's walking around with a Grand Wizard tattoo on his chest. It doesn't get more involved and associated with a gang than that.

Doc. 18-8 at 41-42.[5]

The first complained of argument related to statements that Petitioner had made during a jail call, which was played for the jury during the punishment phase, thus, was simply a proper recount of the evidence. The second was also a recap of Officer Dix's testimony during the punishment phase regarding Petitioner's involvement with the KKK, the Banditos, or other non-law abiding group, and likewise, proper. Doc. 18-7 at 14-16. *See Gaddis v. State*, 753 S.W.2d

---

[5] Petitioner raised prosecutorial misconduct for the first time in his state habeas application and the TCCA implicitly denied his claim. Because his counsel did not make a timely objection during trial, Texas law precluded appellate counsel from raising the issue on direct appeal. *See Penry v. State*, 903 S.W.2d 715, 764 (Tex. Crim. App. 1995). However, because the state habeas court did not clearly and expressly rely on a state procedural bar, the claim was adjudicated on the merits and, thus, is subject to section 2254(d) deference. *See Barrientes v. Johnson*, 221 F.3d 741, 779-80 (5th Cir. 2000) (considering prosecutorial misconduct claim on merits with requisite deference to state court's decision; although petitioner effectively waived prosecutorial misconduct claim by failing to object to prosecutor's comments at trial, state court was not put on notice by state that claim was waived and, thus, state court denied habeas application).

396, 398 (Tex. Crim. App. 1988) (prosecutors can summarize the evidence, draw reasonable deduction from the evidence, respond to opposing counsel's arguments, and make a plea for law enforcement). Accordingly, Petitioner has not shown that the state court's decision to deny his sixth claim was contrary to, or involved an unreasonable application, of clearly established federal law. Thus, Petitioner is not entitled to relief on this ground.

### E. Failure to Give a Lesser Included Instruction – Claim 7

In his last ground for relief, Petitioner complains about the trial judge's failure to instruct the jury on the lesser-included offense of unlawful restraint. Doc. 12 at 35-38. The Texas Court of Appeals concluded that the evidence did not support instruction on the lesser included offense of unlawful restraint. *Stroner*, 2014 WL 31218, *1.[6] In any event, "the failure to give an instruction on a lesser included offense does not raise a federal constitutional issue" in a non-capital case. *See Creel v. Johnson,* 162 F.3d 385, 390-91 (5th Cir. 1998) (citing *Valles v. Lynaugh*, 835 F.2d 126, 127 (5th Cir.1988)); *see also Alexander v. McCotter*, 775 F.2d 595, 601 (5th Cir. 1985). Consequently, this claim fails as a matter of law.

### F. Evidentiary Hearing Not Required

Petitioner requests an evidentiary hearing to "resolve the legal and factual question in his case." Doc. 12 at 8. However, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011); *see also Blue v. Thaler*, 665 F.3d 647, 656 (5th Cir. 2011) (same rule applies to factual determinations under section 2254(d)(2)). Here, as in *Pinholster*, the petition concerns only claims under section 2254(d)(1) that were adjudicated on the merits in state court.

---

[6] The TCCA refused the petition for discretionary review on that claim. Doc. 19-8 at 5.

Petitioner cannot overcome the limitation of section 2254(d)(1) on the record that was before the state court.  Accordingly, he is not entitled to an evidentiary hearing.

### III. RECOMMENDATION

For the foregoing reasons, it is recommended that the petition for writ of habeas corpus be **DENIED**.

**SIGNED** July 16, 2018.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND
### NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); F<small>ED</small>. R. C<small>IV</small>. P. 72(b). To be specific, an objection must identify the finding or recommendation to which objection is made, state the basis for the objection, and indicate where in the magistrate judge's report and recommendation the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute,* 28 U.S.C. § 636(b)(1) (extending the time to file objections from 10 to 14 days).

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE